UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MICHAEL COBB,

              Petitioner,

                                              MEMORANDUM & ORDER
     -against-                                   05 CV 3019

THOMAS RICKS, Superintendent, Upstate
  Correctional Facility,

              Respondent.
-----------------------------------------------------X

DEARIE, Chief Judge.

      Petitioner was convicted, after a jury trial, of second-degree murder, first-degree robbery

and second-degree criminal possession of a weapon in connection with a 1991 shooting on a

Brooklyn street. On January 5, 1993, he was sentenced to consecutive terms totaling 41 years to

life. In this proceeding for a writ of habeas corpus pursuant to 28 U.S.C. §2254, petitioner seeks

an order reinstating the direct appeal of his conviction, which the Appellate Division, Second

Department dismissed as abandoned by order dated November 20, 2003.

      The Court grants petitioner's request and directs that his appeal be restored. As stated at

oral argument and developed here, the highly unusual chronology of appellate events, as well as

an unfortunate but fatal misstep by otherwise exemplary counsel in the crucial last days before

the appeal was lost, satisfy the requirements for habeas relief. See 28 U.S.C.§2254.

## DISCUSSION

### I. Factual Unreasonableness under Section 2254(d)(2)

      Petitioner actively pursued a strategy of seeking to complete post-conviction (C.P.L.

§440) proceedings before perfecting his direct appeal, and consistently and openly presented this

plan to the Appellate Court as his reason for seeking additional time to perfect. Petitioner's dogged but perhaps ill-advised adherence to this plan, which held his appeal forever hostage to his post-conviction proceedings, unquestionably depleted the Appellate Division's abundant—indeed extraordinary—patience with him. What is before this Court, therefore, is *not* the unquestioned authority of the Appellate Division to manage its own very sizeable docket and decide when enough is finally enough, but whether, when exercising that authority, the court made an understandable yet unreasonable factual determination of abandonment. See 28 U.S.C.§2254(d)(2) (authorizing habeas relief where decision of state court is "based on an unreasonable determination of the facts in light of the evidence presented").[1]

Sympathetic to the challenges that a highly involved and invested litigant such as petitioner poses to any court, this Court is nonetheless compelled by the unusual record to find the Appellate Division's determination of abandonment unreasonable. The evidence, which is entirely documentary and undisputed, chronicles six years of largely uninterrupted activity in both the appellate and post-conviction courts that, in its totality, bespeaks the very opposite of abandonment.[2] Likewise, the pattern of communications between petitioner and the appellate court, which culminated in the order to show cause that preceded dismissal, did not adequately warn petitioner of his appeal's impending demise.

This was so for two reasons. First, for a period of six years, from the time James

---

[1]Petitioner raised the same grounds argued here in response to the order to show cause that preceded the dismissal, in a motion to restore the appeal, and in his application for leave to appeal to the Court of Appeals. This "claim," therefore, is "fully adjudicated on the merits in State court proceedings" for purposes of section 2254(d).

[2]The sequence of motions, letters, interim orders and other correspondence and filings is compiled in full detail in petitioner's papers. See Declaration in Support at pages 3-17.

Kousouros was retained and substituted as counsel in November 1997 until three days before the appeal was dismissed as abandoned, counsel was engaged in steady, two-way communication with the Appellate Division about the status of petitioner's appeal. See Declaration in Support, Exhibits C.1-C.50. The Appellate Division's responses might have fairly led petitioner to believe that his appeal was safe as long as he continued to communicate with the court. Although an October 1998 order directed petitioner to "prosecute the appeal expeditiously," thereafter and through as late as July 24, 2003 (only a month before the final pre-dismissal order), the court issued status inquiries remarkable for their *una*larming tone and language (commendable exercises in patience and courtesy, to be sure) and for their silence about the October 1998 order of expedition.[3]

Second, the order to show cause was facially ambiguous. Issued August 1, 2003, that order provided, in pertinent part, as follows:

> Now, on the court's own motion, it is
>
> ORDERED that on or before November 7, 2003, the appellant shall either:
>
> (1) cause this appeal to be perfected . . . or
>
> (2) show cause before this court, at the courthouse thereof . . . on November 7,
>
> 2003 at 9:30 A.M., why an order should not be entered dismissing the appeal as
>
> abandoned.

Petitioner responded to this order by submitting, pro se, an affidavit of cause rather than

---

[3]The Appellate to Division's letters inquired of counsel as follows: "what is the status of this appeal," "how are you progressing with this appeal," "has your client given consent to file the brief yet," and "when do you anticipate the briefs will be filed." Exhibits C.8, 18, 28, 38, 43.

his brief, after which the Appellate Division dismissed the appeal as abandoned.[4]

Respondent, who neither challenged any of petitioner's requests for extensions of time to perfect, nor opposed his motion to restore the appeal after it was dismissed, maintains here that this order unambiguously conveys to petitioner that he must file the brief or face dismissal. Read literally, however, the order can be sensibly understood in another way, as directing that petitioner *either* show cause by November 7 *or* perfect the appeal by November 7—so that if the tendered cause were rejected, there would be a final opportunity to file the brief—and even respondent all but concedes that the order may be ambiguous from the perspective of a pro se defendant. Tr. 10-11. Respondent represents, however, that the order is the standard form by which the Appellate Division directs perfection by a date certain upon risk of dismissal, and is, therefore, utterly unambiguous to practitioners and by extension to petitioner, who was represented.

Respondent's position, that the answer to whether the order is ambiguous turns on whether it is being read by an attorney or pro se defendant, only exposes why relief is required here. The record makes clear that (i) when electing to respond to the order by submitting an affidavit of cause rather than the brief, petitioner was relying on this lay, plain-English reading of the order, in express disagreement with the view of counsel, see Exhibit C.49, and (ii) it was at this most critical juncture of petitioner's long appellate journey that his status had newly slid into the uncertain and precarious gap between represented and pro se. It was apparent to the court

---

[4]Because his 440 had already been denied, petitioner's affidavit, dated October 30, 2003, asked that his appeal await only the decision on his motion to renew his 440 (which it turned out had just been rendered but he had not yet received) and then the Appellate Division's ruling on his application to consolidate his direct and 440 appeals. The order of dismissal refers to "the papers file in response to the order to show cause," so receipt of the affidavit is not in doubt.

4

that the brief-less response to the gravely important order to show cause was submitted *pro se* by a *represented* defendant. Not only was the unremarkable acceptance of the pro se affidavit in stark contrast to the court's earlier practice with petitioner,[5] but it was closely followed by a letter from counsel (sent before the dismissal but after the return date on the order to show cause) that, somewhat paradoxically, both advised the court of a "potential conflict" with his client and "reassure[d]" the court that he (counsel) remained his client's representative. Exhibit C.50-51. In addition to the long appellate chronology, these final documents and the facts they disclose are important "evidence presented" to the Appellate Division within the meaning of 2254(d)(2), in light of which its finding of abandonment is unreasonable.

Petitioner perhaps should not have been surprised that the Appellate Division rejected the 440-first strategy that he proffered as cause, for as far back as April 1998, the court had advised him that "the Appellate Division does not like to wait for the resolution of [440] motions prior to hearing the appeal." Exhibit C.3.[6] But the order to show cause was not unambiguous notice that the rejection of "cause" he might proffer would strip him of a final opportunity to file the appellate brief—a brief that was already written and submitted informally to the court three years

---

[5] When petitioner had previously filed a pro se motion, the Appellate Division returned it to him with the explanation that, because he was represented, all communications with the court should be through counsel. Exhibits C. 30, C.31.

[6] Petitioner, however, might legitimately believed his argument was not entirely foreclosed. When the Appellate Division first advised Mr. Kousouros (in early 1998) that it does not like to make appeals await the conclusion of 440's, it nonetheless granted petitioner, at that same time, "some leeway" and directed that counsel file a motion to extend on those very grounds. Exhibit C.3. Several years later, by letter dated March 1, 2002, the Appellate Division issued the same mixed advice, informing counsel both that "the court does not want perfection of a direct appeal delayed by the pendency of a CPL Article 400 motion," and that, "[i]f you wish to delay perfection, you should move for an order allowing you to do so." Exhibit C. 35.

earlier. Exhibits C.9, C. 16.

It also bears observing that, on this record, petitioner's adherence to his 440-first strategy does not appear to have been pretextual or otherwise employed to delay for delay's sake the perfection of his appeal. The averments in petitioner's state court filings and his letters to counsel evince a genuine belief that at least two of his direct appeal issues (a <u>Brady</u> claim and allegations of trial counsel's ineffectiveness) could be more fully addressed on a 440-amplified record. Among other things, it was not until after his conviction that petitioner, through a FOIA request, obtained for the first time copies of a police scene report and autopsy ballistics report, and the existing record did not resolve whether the People had failed to produce them or whether, instead, they were overlooked by trial counsel.

For all these reasons, therefore, <u>People v. West</u>, 100 N.Y.2d 23 (2003), on which respondent heavily relies, is not controlling here. The Court of Appeals in <u>West</u> found that the appellant there, "[w]hile doing nothing in state court to pursue his appeal," had "repeatedly attempted to bypass the state appellate process" by filing federal habeas petitions. <u>West</u>, 100 N.Y.2d at 27. Petitioner, by contrast, sought to maximize the value of his direct appeal, and was actively involved in the 440 proceedings that from the outset he cast as being in service of the direct appeal.

Also inapplicable here is respondent's reliance a on line of cases under which fugitives, because of their own conduct in absconding, forfeit their right to appeal. <u>See, e.g.</u>, <u>Taveras v. Smith</u>, 463 F.3d 141, 150 (2d Cir. 2006) (collecting cases). To the extent petitioner's "own conduct" accounts for the loss of his appeal, that conduct—a stubborn adherence to his 440-first strategy—hardly compares, for purposes of appellate dismissal, with flight from the jurisdiction.

See Goeke v. Branch, 514 U.S. 115, 118-19 (1995) ("substantial basis for appellate dismissal" exists "where a defendant fails to appear at sentencing, becomes a fugitive, demonstrates contempt for the legal system, and imposes significant cost and expense on the State to secure her recapture"). In any event, in New York, even a fugitive is apparently forgiven, earning restoration of his appeal if he returns. Taveras, 463 F.3d at 150.

Respondent's final contention, that petitioner has procedurally defaulted on his appeal and that the dismissal "constitutes an independent and adequate state ground for denying defendant the relief he seeks," Resp. Mem. of Law at 2-3, is easily disposed of. Certainly the order of dismissal cannot itself be the bar to granting relief from it. Nor do the two rules of procedure cited in the order serve as adequate state law grounds because neither, in fact, applies to the nature or posture of petitioner's appeal.[7] See Lee v. Kenna, 534 U.S. 362, 366 (2002) (procedural rule must be both "firmly established" and "uniformly followed" to be "adequate,"and "adequacy" is a federal question habeas court must decide).

Although the Constitution does not require states to grant appeals as of right to criminal defendants, once a state has created appellate courts as "an integral part of the. . . system for finally adjudicating the guilt or innocence of a defendant," Griffin v. Illinois, 351 U.S., 12, 18 (1956), the "procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Evitts v. Lucey, 469 U.S. 387, 393 (1985). The dismissal of a criminal appeal that is based on an unreasonable factual

---

[7]22 NYCRR §670.8[f] authorizes dismissal of appeals as unperfected when there has been no application for assignment of counsel within nine months of the notice of appeal, but petitioner had assigned counsel who filed the timely notice of appeal. The order also cites "CPL 460.70[c]," but the only part of this section bearing a label "c" is subparagraph 2[c], which addresses appeals from local criminal courts in *non*-felony cases.

determination of abandonment necessarily offends these standards. Abandonment, like waiver, must be knowing and voluntary, but petitioner's misunderstanding of the ambiguous order to show cause was neither. See, e.g., Felder v. United States, 429 F.2d 534, 535 (2d Cir.), cert. denied, 429 U.S. 534 (1970) ("As in all cases of constitutional rights, 'a finding of waiver [of right to appeal] is not lightly to be made'") (quoting Moore v. Michigan, 355 U.S. 155, 161 (1957), and citing constitutional waiver standard of Johnson v. Zerbst, 304 U.S. 458, 464 (1938)); United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000) (waiver of right to appeal in plea agreements regularly upheld "with the obvious caveat that such waivers must always be knowingly, voluntarily, and competently" made) (citing Felder v. United States).

## II. Ineffective Assistance of Appellate Counsel

Alternatively, petitioner argues that his appeal should be restored because the dismissal was the result of the ineffective assistance of his appellate counsel. The Court has carefully reviewed Mr. Kousouros's submission on this point, as well as the extensive appellate and post-conviction records he created, which exhibit exceptional thoroughness and inordinate concern for petitioner's interests, and which make it especially difficult to criticize any particular omission. Nonetheless, because of the importance of a defendant's right to appeal, and the clear duty of counsel to guard that right once exercised, the Court agrees that Mr. Kousouros was deficient in failing to save the appeal. The Appellate Division adjudicated the claim of appellate counsel's ineffectiveness on the merits when it denied petitioner's coram nobis petition on May 2, 2006, in a decision citing Jones v. Barnes, 463 U.S. 745 (1983). That decision, however, involves an unreasonable application of Jones v. Barnes and other clearly established Supreme Court law.[8]

---

[8] People v. Cobb, 29 A.D.3d 602 (2d Dep't), lv. app. denied, 7 N.Y.3d 787 (2006).

8

If a defendant directs his attorney *not* to file an appeal, he cannot later complain that counsel was ineffective for following that instruction, Jones v. Barnes, 463 U.S. at 751, and this is because, as Jones held, "whether to take an appeal" is one of the "fundamental" decisions over which a defendant has "ultimate authority." Id. at 751. It is on this point, however, that the Appellate Division unreasonably misapplied Jones: although Mr. Kousouros did follow petitioner's instructions *not to file the brief at that time*, that instruction was not tantamount to an instruction *not to appeal*. Petitioner had long ago exercised his "ultimate authority" to decide *to* appeal, and the course he elected in response to the order to show cause was, although unsuccessful, intended to *preserve* that appeal.

Petitioner's choice to submit an affidavit instead of the brief, in stubborn furtherance of his 440-first strategy, was itself a "strategic" or "tactical" decision within the meaning of Jones. 463 U.S. at 753. The Supreme Court has made clear that such decisions are not the defendant's to make, but are instead the "exclusive province" of defense counsel, which counsel has a "duty" and "professional responsibility" to make after consultation with his client. Id. Mr. Kousouros rendered ineffective assistance because he neither overrode petitioner's strategic decision to submit an affidavit of cause instead of the brief, nor averted disaster by filing the brief even without petitioner's authorization. The record establishes that Mr. Kousouros must have understood, unlike his client, both that dismissal could result if the brief was not filed,[9] and that the "cause" his

---

[9]At oral argument, counsel for respondent agreed that Mr. Kousouros understood, with no ambiguity in his mind, that the order to show cause warned of imminent dismissal if the brief was not filed by November 7. See Tr. 6. His letter transmitting the order to petitioner, dated August 7, 2003, plainly describes the order as "directing us to file the appeal on or before November 7, 2003." Exhibit C. 45. Mr. Kousouros wrote petitioner again on October 29, 2003, warning that the brief "must be filed by November 7, 2003." Exhibit C. 48. Although neither letter expressly warns of the prospect of dismissal, neither invites the literal "either/or" interpretation petitioner offered in response to, and express disagreement with, these letters.

9

client was submitting would likely be found insufficient. See Exhibits C.3, C.35. In short, acting with the understandable and generally commendable intention of honoring a client's wishes, Mr. Kousouros unfortunately chose a path of deference at the least appropriate time. Prejudice, on these facts, is presumed. Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000) ("when counsel's constitutionally deficient performance deprives a defendant of an appeal he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim").

## CONCLUSION

For all of the foregoing reasons, petitioner's appeal to the Appellate Division shall be restored. Petitioner shall perfect within thirty days unless the Appellate Division directs otherwise. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       May 20, 2008


                              s/ Judge Raymond J. Dearie
                              _____
                              RAYMOND J. DEARIE
                              United States District Judge

---

Exhibit C. 49. In his declaration to this Court, Mr. Kousouros takes no position on the order's meaning or his knowledge, merely restating the contents of the order and of his letters. Exh.B ¶7.